GEORGE S. ALLEN *v.* REUBEN R. THRALL.*

*Declaration.  Contract.  Pleading.  Variance.  Evidence.  Common Counts.  Damages.*

The plaintiff declared specially on a contract concluded between himself and the defendant, in which the plaintiff engaged to construct for the defendant a certain number of straw cutters, which were to be dovetailed together, and the knives in them to be made of cast steel, or of cast steel with iron welded on the sides. The knives were constructed of old scythes, and the machines, by a subsequent request of the defendant, were joined together by mortices, tenons and pins, instead of being dovetailed. *Held,* that this construction of the knives, in the absence of proof that they were of less value when so made, was a substantial compliance with the contract—and that there was no variance between the declaration alleging that the machines were constructed according to the contract, and the proof that they were made as subsequently requested by the defendants.

*Held,* that the plaintiff could not recover under the common count for work and labor and materials furnished, for unfinished machines that were never delivered, and in which the property never vested in the defendant.

---

*This case was decided at the January Term, 1863, Rutland County Supreme Court, but was omitted to be reported with the cases of that term.

Allen *v.* Thrall.

A party contracting to furnish castings for a particular purpose, must furnish them finished and fitted for the use intended.—*Aliter*, in the case of a foundryman, who may introduce witnesses to show the usage of his trade, and the interpretation of the contract may be left to the jury.

It was stipulated in the contract that the machines should be built as fast as five men could manufacture them, and that the defendant should furnish the castings. *Held*, that if the defendant neglected, though not wilfully, to furnish some portion of each set of castings so the plaintiff was prevented from completing the machines as fast as stipulated, the plaintiff was not bound to go on and complete the machines, and fit that portion of the castings furnished; he was not bound to make two or more jobs of fitting the castings on a single machine.

The plaintiff's right to recover in respect to the unfinished machines, is not for the value of his labor and material bestowed on them, but for damages for being prevented from completing them, and thereby entitling himself to receive the stipulated price; and in estimating these damages there should be considered the value to the plaintiff of the unfinished machines in his hands.

Assumpsit, commenced by the plaintiff against Philander Salmon and Reuben R. Thrall. As to the defendant Salmon, the return of service on the writ in said action was *non est inventus, et nulla bona;* and the suit thereupon proceeded against the defendant Thrall alone. The plaintiff's declaration contained three counts, two of which were on a special contract made by the defendants Salmon and Thrall with the plaintiff on the 25th of October, 1844, for the manufacture by the plaintiff for the said defendants, of one hundred straw cutters, and the other count was the common count in *indebitatus assumpsit* for money paid, laid out and expended for work, labor and materials, and for goods, wares and merchandise sold and delivered. Pleas, (1) the general issue, and (2) in set-off. Trial by jury, March term, 1862,—Kellogg, J., presiding. No exceptions were taken on the trial in respect to any question arising under the plea in set-off. No question was made in respect to the execution of said contract by the parties thereto.

The plaintiff's evidence tended to prove, that he completed and delivered to Salmon forty-five finished machines, which Salmon tried and accepted to answer upon the contract; that he had under way and in the process of manufacture, the remainder

of the one hundred machines; that the castings, furnished to
him by the defendants, while the work was in progress, were
furnished in small lots from time to time, not exceeding five
complete sets at any one time, and that he could not carry on
his work under the contract except at great disadvantage, in
consequence of the neglect of the defendants to furnish the cast-
ings necessary to complete the machines; that at or about the
time of the last delivery of the finished machines, (16th July,
1845,) he ceased work on the unfinished machines, for the
reason that both of the defendants, Thrall and Salmon, although
frequently requested by him so to do, did not furnish him the
castings necessary for wholly completing any one machine; that
is to say, that the small iron boxes, in which the gudgeons of the
upper cylinder played, were lacking, and that of the front plates
then on hand, there were two or three sizes, and that hardly two
of the said front plates then on hand would fit to the same fitting
of the wood work; that the timbers of the frame work, instead
of being dove-tailed together, as specified in the contract, were
fastened together by mortices and tenons and pins; and that
the knives instead of being made of cast steel, or of cast steel with
iron welded on the sides, were made of old scythe blades or webs,
and these scythe webs were made of cast steel with iron welded
upon the sides; that in these two particulars he followed
the directions given to him by Salmon, after the making
of the written contract, and that the defendant, Thrall, had
previously told him, that Salmon would have the whole control
and management of the business, and would give all directions
in respect to the same, and that whatever Salmon said about it
would be right; and that the defendant, Thrall, saw some of the
manufactured machines, after they were delivered to Salmon as
aforesaid, and made no objections to the same, on account of any
deviation from the contract in either of these two particulars;
that the plaintiff did employ five hands in the manufacture of the
machines, and kept his work at all times ahead of the complete
sets of castings furnished, and that when he discontinued his
work on the machines, there were on hand none of the small iron
boxes above mentioned, and that none were thereafter furnished,
and that there were then no complete sets of castings on hand,

so that a machine could be put up or completed, and that, of the front plates then on hand there were two or more sizes, and that hardly any two of said front plates, would fit to the same fitting of the wood work; and that when the plaintiff left off work on the unfinished machines as aforesaid, the materials furnished, and used by him in the work upon the unfinished machines, were of no value for any purpose, except to be completed into finished machines. None of the unfinished machines or the materials thereof, came to the use of the defendants Salmon and Thrall, or of either of them; that the defendants, Salmon and Thrall did, before the 16th of July, 1845, furnish to the plaintiff complete sets of castings, including the small iron boxes, for the one hundred machines, and that they remained at the plaintiff's shop, until long after the plaintiff had abandoned the work, viz: until April, 1847, when the defendant, Thrall, took away said castings; and that the iron front plates might have been fitted to the machines, and all the iron and wood work completed and put together, in the absence of the small iron boxes, without difficulty or increased expense, and that to insert the iron boxes, after the completion of the machine in all other respects, only required very little labor.

The plaintiff's evidence further tended to prove that a part of the castings which were furnished to him, and which he used in the manufacture of the finished machines, were not, in the condition in which they were furnished to him, finished and fitted for use, and could not be used, and that Salmon requested the plaintff to fit and file such castings so that they would match and work, which the plaintiff did, under an agreement made by him with Salmon, that he (the plaintiff) should be allowed and paid two shillings per set (the amount claimed by him) therefor. The defendant, Thrall, claimed that the written contract did not cast the duty upon Salmon and himself to furnish finished castings, or such as would fit without filing to the use intended, and that it was the duty of the plaintiff to finish and fit the castings furnished to him, so as to adapt them to the use for which they were intended, as a part of his duty under the provisions of the contract, and without any extra compensation therefor; and the defendant, Thrall, introduced the testimony of witnesses who had been

engaged in business as iron founders, or were conversant with that business, tending to prove that, by the common understanding and custom of that trade, the *making* of iron castings and the *finishing* of the same are distinct matters or processes, and that the *furnishing* of castings does not include the *fitting and finishing* of them. But the court, against this claim of the defendant, Thrall, instructed the jury that it was the duty of the defendants, Salmon and Thrall, under the written contract, to furnish to the plaintiff such castings as were finished and fitted for the use intended, and that if the plaintiff, at the request of Salmon, as the evidence tended to prove, bestowed labor to finish up and fit for such use the castings, he, the plaintiff, was entitled to recover a reasonable compensation for such labor in this action, not exceeding the amount agreed upon between himself and Salmon as the compensation therefor, under the common count for work and labor. The only provision of the contract in respect to such castings was that " the said Salmon and Thrall are to furnish the castings." ·

The jury returned a verdict for the plaintiff for $522.04 damages, including therein the value of the labor on, and materials for, the unfinished machines as above mentioned, and also the amount of the plaintiff's claim for the filing and fitting of the castings as aforesaid, together with interest thereon from the 16th of July, 1845, to the 20th of September, 1862,—the last mentioned date being the time when the verdict was returned.

Exceptions by the defendant.

The other material facts in the case, together with the claims of counsel, and the charge of the court in respect thereto, sufficiently appear in the opinion of the court.

*R. R. Thrall* and *D. Roberts*, for the defendant, maintained—1. That the plaintiff could not recover under the special counts by reason of the alteration in the construction of the machines, and cited upon this point *Dana & Henry* v. *Hancock*, 30 Vt. 616 ; *Briggs* v. *Vt. Central R. R.*, 31 Vt. 211 ; *Hill* v. *Smith et al.*, 32 Vt. 433. The plaintiff must aver exact performance. 1 Chitty Pl. 283. And the proof must be according to the averment.

2. As to the unfinished machines, the plaintiff cannot recover

on the common counts, as the work and labor was bestowed upon his own machines. 2 Sm. Lead. Cases. 13 ; *Smith* v. *Smith*, 14 Vt. 440 ; *Myrick* v. *Slason*, 19 Vt. 121 ; *Camp* v. *Barker*, 21 Vt. 470. And it makes no difference though the performance be prevented by the defendant. 1 Ch. Pl. 304 ; 2 Sm. Lead. Cases, Am. Notes, 41 ; *Halle* v. *Heightman*, 2 East, 145 ; *Atkinson et al.* v. *Bell et al.*, 8 B. & C., 277, (15 E. C. L., 216).

3. The plaintiff was bound to finish the machines as far as he could do it, in the absence of the small iron boxes, and not having done so, he has not shown full performance on his part.

4. The meaning of the phrase "*fiinished castings*," was a question for the jury in view of the custom of the trade. *Roberts* v. *Button et al.*, 14 Vt. 195 ; *Durkee* v. *Vt. Cen. R. R. Co.*, 29 Vt. 143 ; *Herrick* v. *Noble & Son*, 27 Vt. 1 ; *Noyes* v. *Canfield*, 27 Vt. 79.

*D. E. Nicholson* and *C. C. Dewey*, for the plaintiff, maintained that—1. The plaintiff is entitled to recover under the special counts. There was no *substantial* departure from the written contract, declared upon in the mode of constructing the machines. They were the same in character, utility, value and cost, when constructed in the modified form, as the machines stipulated for in the written contract. The jury must have found, under the charge, that the modifications in the construction were non-essential, and that they are treated as "a mode of performing the contract," and cited 2 Sm. Lead. Cases, 28 ; *Clark* v. *Smith*, 14 Johns. 326 ; *Algero* v. *Algero*, 10 Serg. & R. 235 ; *Moulton* v. *Trask*, 9 Met. 577 ; *Chamberlin* v. *Scott*, 33 Vt. 80 ; 3 Hill, N. Y. 129.

2. The completion of the machines having been prevented by the defendant, the plaintiff may recover for work and labor done upon them under the common counts. Chitty on Con., 10 Am. Ed. 615 and note p. and cases there cited. *Hill* v. *Hovey et al.*, 26 Vt. 109 ; *Bruce* v. *Greenbanks*, 33 Vt. 226 ; *Chamberlin et al.* v. *Scott*, 33 Vt. 80 ; *Mattison* v. *Wescott*, 13 Vt. 258.

3. The contract did not require the plaintiff to take the castings *half made*, and file and bore them. The contract contemplates by a fair construction, that the plaintiff was to do the wood work only.

PECK, J. The first objection the defendant relies on is that the plaintiff can not recover under the special count for the unfinished machines not delivered, for the reason that the proof did not support the declaration. It appears by the declaration and the written contract in evidence, that the knives were to be made of cast steel, or cast steel with iron welded upon the sides, and that the machines were to be dovetailed together in a good workmanlike manner. The declaration alleges that the work was done (up to the time the plaintiff was prevented by the defendants' neglect,) according to the contract. The proof was that the knives in the machines made, were made by direction of the defendants, given subsequent to the making of the contract, of old scythes, and that the old scythes were of cast steel with iron on the sides. We are unable to see in what particular these knives differ from the contract, in the absence of proof that they were less serviceable by reason of having been made of scythes. In this particular the performance proved agrees with that alleged. It is insisted that the machines being put together by mortices, tenons and pins by direction of the defendants given after the contract was made, instead of being dovetailed, constitutes a variance. This is claimed upon the ground that such direction, if it justified the plaintiff in changing the mode of constructing the machines,·is an alteration of the contract, and that it should have been so declared on. To constitute such alteration of the contract, the parties must have entered into some new binding engagement in this particular. The mere request or direction of the defendants to thus vary the mode of putting the machines together, and the plaintiff so making them in pursuance of that request, is no alteration of the contract. It does not amount to an agreement mutually binding that the machines should be so constructed, and therefore need not be stated in the declaration in describing the contract. But it is claimed that it is a different mode of performance from the performance alleged, and that in this respect there is a fatal variance. In this respect the proof does not literally agree with the performance alleged. It would have been more circumstantially accurate to have alleged that the machines were made agreeably to the contract except in this particular, and that in this particular they were made in the

manner they were, by direction of the defendants, or to their acceptance. At first I had doubts whether, according to the strict rules of pleading, some such allegation was not necessary to meet the proof in this case. It would give the defendant more specific notice of the facts on which the plaintiff relied. But the rules of pleading were made for practical use, and should be so applied as on the one hand to give the adverse party reasonable notice of what will be relied on at the trial, and on the other hand such strictness and particularity ought not to be required as to embarrass the administration of justice. We finally conclude, as there was no alteration of the contract, and the variation in the performance is so slight, that the proof in this respect was a substantial satisfaction of the averment, in as much as the jury have found that the departure was by direction of the defendants and that it did not affect the character, utility or value of the machines, and that it was treated by the parties as a mode of performing the written contract.

2. It is insisted by the defendant's counsel that the court erred in holding that, the common count for work and labor and materials furnished was adapted to the claim for the unfinished work not delivered. In this the court was wrong in point of law. It is clear that the property in these fifty-five machines never vested in the defendants, therefore the count for goods and chattels sold and delivered would not lie; nor the count for work and labor and materials furnished. The materials never went to the defendants' use, and the plaintiff never parted with the property in them, but still owns them. Nor can he recover for the labor bestowed upon them, for the labor was bestowed by the plaintiff on his own materials, and in a legal sense the labor goes to the plaintiff's use, not the defendants'. Nor was the plaintiff in the employ of the defendants in such a sense as to enable him to recover for work and labor. The plaintiff was at work for himself in his own business, although at work upon machines intended for the defendants. It was the machines completed the defendants contracted for, not the plaintiff's labor. There was no contract of hire, it was an agreement for the purchase of the *product* of the plaintiff's labor, which the defendants never had and which the plaintiff still owns and retains. This is clearly

so as it appears that none of the defendants' castings had been put upon these unfinished machines. This part of the plaintiff's claim is in the nature of damages for breach of a special contract, and cannot be recovered under the general count. But this is not an error of which the defendant has a right to complain, as there was a special count adapted to this part of the case. If the facts proved entitled the plaintiff to recover for this part of his claim and the charge in other respects was correct, it was indifferent to the defendant on which count the recovery was had. This error therefore worked no injury to the defendant.

3. As to the claim for finishing castings, we think the charge was correct. Had this been a contract by a foundry-man to make or furnish castings, the evidence as to the custom of the trade might have been properly left to the jury upon the question of the interpretation of the contract; but under this contract the defendants were bound to furnish castings finished and fitted for the use intended. If the defendants requested the plaintiff to finish and fit the castings for a compensation, as the charge required the jury to find, the defendants were bound to pay for it.

4. It is claimed on the part of the defendant that the charge of the court was not sufficiently specific as to what neglect of the defendants in furnishing the castings would justify the plaintiff in suspending the work. The court told the jury substantially that unless they found the plaintiff was prevented from finishing the machines by the defendants' neglect to furnish the castings, he could not recover for the unfinished machines, and that it was the defendants' duty to furnish the castings as fast as was necessary to enable the plaintiff to finish the machines as fast as he had stipulated to complete them, that is, as fast as five men could manufacture them; and that the plaintiff was under no obligation to complete any machine till the defendants furnished the castings to do it with. The defendants' counsel claimed that if there was no refusal by the defendants to furnish the castings, but only a neglect not wilful, to furnish some portion of the set, that is, the small iron boxes, it was the duty of the plaintiff to go on and complete the machines and fit the castings on hand as far as he could conveniently in the absence of the small boxes.

Assuming that there was evidence on which to base this request, we think the defendant was not entitled to a charge in accordance with such request.    The plaintiff was not bound to make two or more jobs of fitting the castings on a machine.    The charge given on this point was as favorable to the defendant as he had a right to ask.

5.    The rule of damages laid down in the charge, as applicable to the unfinished machines not delivered, is erroneous.    The rule given to the jury is the value of the materials and labor upon them, to be estimated on the basis of the contract price of the machines when completed, that is, such portion of the stipulated price as the materials and labor bestowed bears to the materials and labor requisite to make and complete a machine. This rule gives to the plaintiff the full value of his materials and labor, and also the property.    The property is, or may be, of some value to the plaintiff, and yet he receives the same as if the machines became the property of the defendant.    The plaintiff's right to recover on this branch of the case, is not for the value or price of his materials and labor, but for damages for being prevented from completing the machines and thereby entitling himself to receive the stipulated price.    By the breach of the contract on the part of the defendants, the plaintiff is left with the unfinished machines on his hands, and whatever they are worth to him should be considered in estimating the damages. This point is decided in *Boardman, Adm'r v. Keeler,* 21 Vt. 78 ; and in other cases that might be cited.    It is true that it is said in the books that if one party to a contract is ready and willing to perform, and is prevented by the other party, he is thereby excused from a performance, and that it is equivalent in law to a performance on his part.    It is said also that an offer to perform is equivalent to a performance, if the other party refuses.    This is all true so far as it relates to the right to recover, but not true as applicable to the rule of damages.    This question was not raised in the county court by any request to charge, but as there is a general exception to the charge as given, the defendant has a right to avail himself of the error.

Judgment reversed and new trial granted.